BETSEY KETCHUM, Respondent, *v.* JAMES A. HOLDEN, as Administrator with the Will Annexed of AUSTIN W. HOLDEN, Deceased, Appellant.

*Money paid by mistake — agent of a deceased person may prove his declarations — indirect testimony as to transactions with a decedent.*

A wife paid money to a person who was surety upon a bond given by her husband to an insurance company for the faithful performance of his duties as its agent, the insurance company claiming that the agent was short in his accounts in an amount not definitely known. It was subsequently found that the deficiency was less than the wife's payment to the surety.

*Held,* that she was entitled to recover of the surety or his estate the difference between what she gave him and what he paid, as money paid by mistake;

That the testimony of the agent of the surety, who had charge of the transactions by which the surety was indemnified (the surety having died), as to declarations of his principal, was not obnoxious to the provisions of section 829 of the Code of Civil Procedure;

That testimony of the wife as to the time when she first learned that the surety had paid to the insurance company for her husband's default a sum less than that which she had paid the surety was not objectionable under section 829 of the Code of Civil Procedure.

APPEAL by the defendant, James A. Holden, as administrator with the will annexed of Austin W. Holden, deceased, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Warren on the 2d day of January, 1895, upon the report of a referee, with notice of an intention

to bring up for review upon such appeal an order or certificate of said referee allowing costs to the plaintiff.

*H. P. King,* for the appellant.

*J. H. Bain,* for the respondent.

MAYHAM, P. J.:

Daniel B. Ketchum, being an agent of an insurance company, gave his bond to said company, with Austin W. Holden and William Mallory as sureties, for the faithful performance of his duties as agent.

In December, 1884, Holden, one of the sureties, was notified by the insurance company that Ketchum, the agent, was short in his accounts in an amount not definitely known, but supposed to be about $350. On the 17th of December, 1884, the plaintiff executed and delivered to Holden her bond and also a mortgage collateral thereto on property owned by her in the village of Glens Falls for the sum of $350. The bond and mortgage were given to secure Holden against his liability as surety on Ketchum's bond to the insurance company. The business was transacted, as appears by the evidence on the part of Holden, by Daniel A. Wilson, who was paid thirty-eight dollars by Holden for transacting such business.

At the time of making the arrangement and the execution of the mortgage, it was understood and agreed that the mortgage was to indemnify Holden for any amount that he might be required to pay as surety for Ketchum, within the $350, and that if the amount fell short of that sum, the difference between the amount which he was compelled to pay and the $350 was to be indorsed upon the bond and mortgage.

On the 24th of August, 1885, the plaintiff borrowed $500 of one Ordway, and in order to give a clear title, placed that amount with Judge Cheritree, as her agent, with directions to satisfy Holden's claim, so that her mortgage to Ordway should be a first claim. At that time the amount of Holden's liability on Ketchum's bond to the insurance company had not been ascertained, and Cheritree paid the whole amount of the mortgage to Holden, who, at that time, was ignorant of the amount of his actual liability to the insurance company, as was also this plaintiff and Cheritree.

Subsequently the amount of Holden's liability on the bond was liquidated with the insurance company, and on such liquidation it appeared that Cheritree had paid Holden eighty-five dollars more than sufficient to indemnify Holden for the amount of his liability to the insurance company as surety on the bond.

Holden having died, and this defendant having been appointed his administrator, the plaintiff presented a claim against the estate of Holden to the administrator for this sum of eighty-five dollars and interest, claiming that that money was paid by mistake, and under the agreement between herself and the agent of Holden, at the time of the execution of the bond and mortgage, she was entitled to that amount from his estate.

The administrator rejected the claim and refused to allow the same, and upon that rejection a referee was agreed upon, with the approval of the surrogate, and upon the hearing of that reference a report was made in favor of the plaintiff for the eighty-five dollars and interest.

That report was confirmed and the plaintiff, upon such confirmation, had judgment against the defendant as administrator for that amount, together with the costs of the action. From that judgment the appellant appeals.

The referee found substantially the above-recited facts, and, as a conclusion of law from those facts, makes the following finding:

"I find as conclusion of law that the overpayment to the said Holden of $85.01 was by a mistake and want of knowledge of the the facts; that plaintiff is entitled to recover said sum and interest thereon from time of payment. Judgment, with costs, is ordered accordingly."

This report was signed by the referee.

From the evidence in the case the referee's finding of facts seem to be fully sustained.

On the trial some objections were taken to evidence offered on the part of the respondent. Daniel A. Wilson, who assumed to act as agent for Holden in obtaining the mortgage, was called by the respondent and asked to narrate a conversation between him and Holden. This was objected to by the appellant on the ground that his testimony was inadmissible under section 829 of the Code.

We see no force in that objection. Wilson was not a party to

the action, nor does it appear that he was interested in the event of the action. As the agent of Holden it was clearly competent, it seems to me, to prove Holden's declarations by him.

It is also insisted that the referee erred in refusing to strike out that portion of the testimony of the respondent wherein she states that Wilson informed her, after the death of Holden, what amount Holden had in fact paid to the insurance company, and that was the first information she had of that amount. This evidence was not objected to, but after it was given the appellant moved to strike it out.

While technically such evidence might not have been competent if objected to before it was given, yet, in view of the remote bearing, if any, which it could have upon the merits of this case, and the fact that the objection came too late, we do not think it such an error as would justify the reversal of this judgment.

It was also objected that the testimony of the respondent, as to the time when she first learned that Holden had paid less than the full amount of the mortgage to the insurance company, was objectionable and improper, on the ground that it was indirectly testifying to a transaction or communication with Holden, or was testifying to a non-transaction which brought it within the prohibition of section 829 of the Code.

We do not think the evidence involved any personal transactions with the deceased, nor was it that class of evidence held to be objectionable on the ground that it proves the want of a transaction with the deceased.

We can see nothing in the evidence which renders it illegal, for which the judgment should be reversed.

On the whole case, we find no error committed by the referee which would authorize this court to reverse the judgment.

Judgment affirmed, with costs of this appeal against the administrator as such to be paid out of the estate.

PUTNAM and HERRICK, JJ., concurred.

Judgment affirmed, with costs to be paid out of the estate.